JOHN L. CONOVER

*v.*

WILLIAM A. TANSEY.

[Decided October 21st, 1907.]

Neither a receiver nor a manager will be appointed to execute a farming contract on a bill by the owner of the land, though he charges the farmer with bad husbandry and with breaches of important covenants, where the farmer has answered the equity of the bill, where the owner delayed for months after an attempted rescission in asking relief, permitting the farmer in the meantime to put in and partially harvest crops, where there is no provision in the contract for rescission, forfeiture or re-entry for breach thereof, and where the inconveniences attending such appointment would be very great.

On motion to appoint receiver, &c.

Mr. *Louis H. Schenck,* for the complainant.

Mr. *Joseph Reilly* and Mr. *Michael J. Tansey,* for the defendant.

HOWELL, V. C.

The complainant applies for an order appointing a receiver to carry out the terms of a farming contract between him and the defendant, or, failing in that, to appoint a manager under whose supervision the work provided therein may be performed.

The contract relates to the working on shares of the complainant's farm. It bears date March 10th, 1906, and runs for three years, from April 1st, 1906. It contains rather minute directions as to the duties of the parties and the manner of planting, harvesting and dividing the crops.

Within a few months after the agreement went into operation disputes arose between the parties, which have been carried to such a pitch as to break off all friendly relations between them. On one occasion they came to actual blows. The situation at least became so embarrassing to the complainant that on September 12th, 1906, he served a notice on the defendant, the object of which was to rescind the agreement on and after April 1st, 1907. The complainant now files his bill on August 23d, 1907, nearly five months after the attempted rescission, and after the crops of 1907 had been planted, and some part of the produce of the farm harvested and sold. He charges the defendant with bad husbandry and with having defrauded him out of his equal share of the crops in the division thereof. The charges of dereliction are numerous and constitute, if true, breaches of very important covenants of the agreement. He asks that the contract may be declared to have been rescinded in pursuance of his notice, and that the parties be restored to their original position; that the defendant may account for the excess of the farm produce received by him over and above that paid and delivered to him by the defendant, and that a receiver or manager may be appointed to supervise the conduct of the busi-

ness done under the contract for the remainder of its term. There is also a prayer for an injunction which will be mentioned later.

The allegations of the complainant are answered by the defendant. He has filed a full answer and exhibited supporting affidavits, which are also very full, and which are intended to deny the complainant's assertions in matters of fact. He claims to have performed the contract on his part, and makes counter-charges of breaches of material covenants contained therein by the complainant.

A careful reading of the affidavits leads me to the conclusion that the defendant has fully met the complainant's charges of fact—in other words, that he has answered the equity of the complainant's bill, and that on the facts alone the complainant is not entitled to the preliminary relief which is the subject-matter of this motion.

There are, however, other reasons arising out of the situation which ought to be considered. In the first place, the long delay of the complainant in seeking relief is an important consideration, even if he could by any possibility be otherwise entitled to the relief prayed by his bill. His notice of rescission, so called, was given in September, 1906; it purported to rescind the contract on April 1st, 1907. If his right to rescind was clear and his notice effective to cancel the contract he should have proceeded immediately after the time fixed by himself for the ending of the contract to assert his right by appropriate action. This he failed to do. He waited nearly five months, and it appears by the statements of both parties that in the meantime the spring operations for 1907 had been begun and had been carried on by the defendant, as he claims, in pursuance of the contract; that the land was cultivated; the crops sowed and planted, and that in August, 1907, when he appealed to the court, some of the crops had been gathered, and other portions thereof were ready for harvesting; considerable money had been received by the defendant for sales of produce, and all this under the eye of the complainant, who resided on the farm and who has kept an account of all the discrepancies in the performance of the contract and in the distribution of the proceeds, as is shown by his own affidavit.

In the light of these admitted facts it would be unjust to take the conduct of this farm from the defendant and subject the fruits of his summer's labor to be handled by a stranger, or his actions supervised by an officer of the court, who necessarily would be ignorant of the farming scheme.

Again, there is no provision in the contract for rescission or forfeiture or any right of re-entry reserved for breach of the agreement, or any of its covenants. The whole affair is a matter of covenant.

In a case decided by Lord Northington in 1762 (*Rayner* v. *Stone, 2 Eden 128*), in which an attempt was made to compel specific performance of the covenants of a farming lease, the lord-chancellor said: "I am sure I shall never consider what are called common covenants in a lease, as specific covenants to be subject to the jurisdiction of this court." Cited by Judge Stirling in *Phipps* v. *Jackson, 56 L. J. Ch. (N. S.) 550*, also a landlord and tenant case. But it is urged that the relation of landlord and tenant does not exist here. This is probably true, yet the relation between the parties is conventional and lies in covenants which relate to husbandry.

The theory of the complainant's case is not that the parties are landlord and tenant or partners generally, but that they are joint adventurers, and are tenants in common of the growing and gathered crops. *Guest* v. *Opdyke, 31 N. J. Law (2 Vr.) 552; Warwick* v. *Stockton, 55 N. J. Eq. (10 Dick.) 61,* and as such are subject to at least some of the rules which regulate partnerships; among which is the rule that equity will dissolve the relation of partnership in a case where the parties have lost all confidence in each other's ability and honesty, and in consequence thereof there is likely to be a failure of the scheme of business operations and necessary loss to both parties. This rule is invoked by the complainant upon the ground that the relation between these parties is a *quasi* partnership.

I have not been able to find any authority for the action suggested by the complainant, nor has counsel furnished me with any precedent. I would not be willing to venture an opinion on the validity of such a course on the consideration of a preliminary motion.

Lastly, the inconveniences attending the appointment of a receiver or manager would be very great. The contract is still being carried on by the defendant. He has bound himself to do the farming work required by it, and his judgment as to the manner of doing it is an essential part of the plan. What could be the scope of the powers, duties and obligations of a receiver under such circumstances? Would he do the work or employ others to do it? Could he eject the defendant from the premises? Is it certain that he could always agree with the complainant in the performance of any of his duties? Lord Northington, in the case cited, asks: "How can a master judge of repairs in husbandry? What is a proper ditch or fence in one place may not be so in another. It is said that this is an equitable right, and it is insisted that I should now put the plaintiff in a better state than what he can be at law, but the court has no jurisdiction to strip the defendant to try the supposed breach of contract at law; besides, how can a specific performance of things of this kind be decreed? The nature of the thing shows the absurdity of drawing these questions from their proper trial and jurisdiction."

To put the conduct of this business in charge of a receiver, a manager, or a master of this court, would be to substitute the judgment of a stranger for the judgment of the parties, and in case of dispute there would necessarily be appeals to the court for directions which would compel a substitution of the court as ultimate manager of what is contended by the defendant to be a continuing contract.

The bill contains a prayer that the defendant be enjoined from using, selling, encumbering or disposing of the crops gathered and to be gathered, and from collecting or in anywise selling, or transferring the proceeds from the sale of apples which have been already shipped.

It is quite apparent from the foregoing discussion that the granting of this portion of the prayer would create a situation which would be very troublesome. In fact, it would practically prevent the defendant from performing the contract.

For these reasons I am compelled to deny the motion.